Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
22 Battery Street, Suite 885
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Fredric J. Greenblatt
GreenblattLoveridge, Attorneys at Law
22151 Ventura Boulevard, Suite 200
Woodland Hills, California 91364-1600
Tel: 818.992.1188
Fax: 818.992.7687
fjg@greenblattlaw.com

Counsel for 3884 Stoneridge, LLC,
    GreenblattLoveridge and Frederic J Greenblatt

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

San Francisco Division

| | |
|---|---|
| In re<br><br>ROBIN ELAINE WILSON,<br><br>Debtor | Case No. 16-31073 DM<br><br>Chapter 7<br><br>DATE: February 21, 2018<br>TIME: 10:00 a.m.<br>JUDGE: Honorable William J. Lafferty III |

**OPPOSITION TO
MOTION FOR CONTEMPT
FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY**

**I.    SUMMARY**

Judith Bolter ("Bolter"), claiming to be a creditor injured by a violation of the automatic stay, filed and served the instant Contempt Motion and an associated Adversary Proceeding. Adv. Pro. 17-3073; Dkt # 168. The Debtor *does not* join in these contentions.

Governing Ninth Circuit authority, consistently applied to appeals in this District, holds that Bolter does not have standing to pursue violations of the automatic stay. Even if she had standing, the circumstances of the instant case would not warrant either a finding of contempt or any award.

## II.     FACTS

### A.     The Bankruptcy Case

The Debtor owned property at the intersection of Alabama and 25th Street (the "Property") which she sought to redevelop into two large residential units. To raise funding for the effort, she encumbered the Property with a first deed of trust to secure repayment of $2.7 million in principal (the "Stoneridge Debt") and a second deed of trust in favor of Judith Bolter ("Bolter") to secure the payment of approximately $280,000. She found herself unable to repay the loans and foreclosures were commenced. The Debtor embarked on protracted and largely unsuccessful litigation with Bolter regarding the enforceability of her 15% interest rate. On October 3, 2016, on the eve of foreclosure, the above Debtor initiated this case as a Chapter 11 case.

The premise of the Chapter 11 case was that the Debtor would sell or refinance the Property so as to satisfy her secured debts. The amount owed in connection with the Stoneridge Debt aggregated to about $3.5 million due to a protracted pre-petition and post-petition failure to fund debt service. The amount owed Bolter secured by the second deed of trust had been established by the Superior Court at about $1 million, although Bolter continued to assert that the debt was closer to $1.6 million.

The Debtor's Schedules valued the Property at $5.5 million. Dkt #29. Post-petition, it was listed for sale at $5 million. Were it to sell for $5 million, the net realizable equity would only have been about $150,000. Debtor's Opposition to Conversion; Dkt #74; 2:26-3:4. As the case proceeded, evidence was adduced to the effect that the broker viewed the $5 million listing price as too high and likely to chill the marketing and had asked to reduce it to $4.5 million. Dkt #135, 2:23-3:3.

In July 2017, the Court converted the case to Chapter 7. The Trustee investigated the Property, concluded that "there is no equity in the Property for the benefit of the estate and, as a result, the Property is of inconsequential value and burdensome to the estate." Dkt #153. The Debtor sought and

obtained the Trustee's stipulation to abandon the Property; Dkt #153; thereby waiving the automatic stay; Section 362(c)(1); in order to facilitate Stoneridge's foreclosure. See, Wilson Dec., .Dkt #171-2; Dkt. ##153, 156 and 162. In seeking abandonment, the Debtor explained: "As the Court and all parties are aware, and as Bolter has already argued in her motion for relief from stay, there is no equity in the real property at issue." Dkt #163. Thereafter, the Chapter 7 Trustee filed a "No Asset" Report. Docket Entry for 11/16/2017.

Bolter obtained relief from stay enabling her to conduct a non-judicial foreclosure of the Property on or after November 10, 2017. Dkt #150. For reasons known best to herself, Bolter deferred causing the trustee's sale to be conducted. On December 28, 2017, Stoneridge conducted its foreclosure sale of the Property. Stoneridge purchased the Property with a credit bid. Stoneridge's recorded deed is attached as Exhibit A to the accompanying Greenblatt Declaration.

### B. *Bolter's Multiplying Litigation*

The Docket in the case runs to about 170 entries. Every Adversary Proceeding and virtually every contested matter was initiated by Bolter.

- ✓ Within a month of the filing of the bankruptcy case, Bolter filed her first Motion for Relief from Stay to foreclose on the Property. Dkt. #19.

- ✓ Bolter filed a Motion to Convert the case. Dkt #59.

- ✓ Bolter filed an Objection to the Debtor's Claims of Exemption. Dkt #61. As a secured creditor, it is unclear how Bolter thought she could be affected by the Claims of Exemption. The Court took it off calendar at the initial hearing, explaining to Bolter's counsel "If you foreclose, you're not a creditor anymore." Audio of 7/27/17 Hearing; Dkt #138; at 38 min.

- ✓ Bolter filed an Objection to the employment of the Debtor's Litigation Counsel. Dkt #98.

- Bolter's inappropriate discovery tactics required the Debtor to prosecute a Motion to Quash; Dkt #103; which the Court granted; Dkt #110.

- Bolter filed an Amended Motion for Relief from Stay; Dkt 125; to no apparent purpose or effect; Dkt. #131.

- Bolter filed an Objection to Stoneridge's Proof of Claim; Dkt #127; but it is difficult to see what that could accomplish – had the Objection been meritorious – in the absence of a pending sale of the Property. But see, Dkt #130 regarding the absence of merit. At the initial hearing, the Court took it off calendar. Audio of 7/27/17 Hearing; Dkt #138.

- The Motion to Convert was granted in July, and the Chapter 7 Trustee thereafter entered into a Stipulation Abandoning the Property. Dkt #153. Bolter opposed the Stipulation – *without any substantive basis for doing so*; Dkt #155 – requiring an application to set it for hearing on shortened time. Dkt #158-161. Bolter then did not appear at the hearing; Dkt #163; and the Stipulation was approved.

- Bolter set her Amended Motion for Relief from Stay for a continued hearing. Dkt #146. The Motion was granted; Dkt #150; authorizing her to conduct a nonjudicial foreclosure sale on or after November 10, 2017.

- Instead, and seemingly inexplicably, Bolter filed a Complaint objecting to the Debtor's discharge, premised principally upon failures in recordkeeping and her conduct as a Debtor in Possession, such as the unauthorized use of cash collateral. See, Adv. Pro. 17-3073. It is difficult to imagine the economic justification for an Objection to Discharge, remembering the Court's prior admonition to Bolter's counsel "If you foreclose, you're not a creditor anymore." Audio of 7/27/17 Hearing; Dkt #138; at 38 min.

✓ Having failed to avail herself of relief from stay to foreclose and having been foreclosed out at Stoneridge's December 28, 2017 foreclosure sale, Bolter initiated the Stay Litigation, thus far consisting of *both* an Adversary Proceeding; Adv. Pro. #18-3004; *and* a Contempt Motion; Dkt #168. The premise of the Stay Litigation was that the Stoneridge foreclosure sale violated the "debtor's stay" and that Bolter is entitled to enforce the automatic stay and seek damages, principally consisting of the attorney's fees Bolter is now incurring prosecuting that stay violation. Compare, Dkt 168-2 ("the reasonable value of my fees is…"); with Dkt #168 (seeking payment of those fees).

✓ At the end of January, one month after Stoneridge foreclosed on its first deed of trust, Bolter assigned her claim and junior deed of trust to an entity she owns, 7.83 Hz LLC; Exhibit B to Greenblatt Dec., and caused it to conduct a foreclosure sale of the Property, which it purported to acquire through a credit bid; Exhibit C to the Greenblatt Dec. Doing so presumably ended Bolter's standing to prosecute the Objection to Discharge.

### III. LEGAL ANALYSIS

#### A. *The Asserted Stay Violation*

Through the Stay Litigation, Bolter argues that the Stoneridge foreclosure sale violated the automatic stay. There is technical merit to the argument.

The automatic stay prevents actions against "property of the estate" and against "property of the debtor." The stay against property of the estate, on which Stoneridge and the Debtor focused, terminated when the Court approved the Stipulation for Abandonment on October 27, 2017. Dkt #153; Section 362(c)(1) and 554. The stay against property of the debtor could reasonably have been expected to terminate on October 30, 2017, the deadline for objecting to the Debtor's discharge. After all, there was only a trivial amount of general unsecured debt, and the only active litigant – Bolter – had on

October 26, 2017, only a few days before, received the relief from stay she had been seeking for a year, but that Order required her to proceed by non-judicial foreclosure. Dkt #150.

So, it was not surprising that Stoneridge proceeded to foreclosure without searching to see if a timely Objection to Discharge Complaint had been filed. Greenblatt Dec.; Section 362(c)(2)(C). But Bolter had filed such a Complaint, thereby keeping Wilson's automatic stay alive. Adv. Pro. 17-3073. Since Bolter's foreclosure would, as the Court noted, satisfy her claim, one infers that the objective of the Objection to Discharge was to preserve and extend the Debtor's automatic stay. See, Greenblatt Dec.; Dkt #171-3.

Before addressing whether, under these circumstances, the stay should be annulled, it is appropriate to consider the peculiar context of the Stay Litigation.

### B. *Bolter Has No Standing to Prosecute the Stay Litigation*

Long before Bolter commenced the instant Stay Litigation, the Court volunteered the fact that Bolter she would not have standing to do so. ("I don't think you can invoke the current stay. The case law doesn't let a junior creditor invoke the stay." Audio of 10-26-17; Dkt #151; at 2:30 min.). Bolter nonetheless elected to commence the Stay Litigation.

Contrary to the Court's warning, Bolter asserts that as a creditor she has standing to enforce the automatic stay; Contempt Motion; Dkt #168-1; 2:14-3:6; but does so by citing only *dicta* in two cases: broad language from *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1146 (9th Cir. 2004) (debtor may recover damages for emotional distress); and *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 615, (9th Cir. 1993) (entity that was predecessor in interest to debtor could not obtain damages under Section 362(k).)

In contrast to Bolter's actual objective, the *dicta* suggest that the automatic stay protects creditors by protecting bankruptcy's collective distribution process. *Burton v. Infinity Capital Mgmt.*, 862 F.3d

740, 746 (9th Cir. 2017) (the stay is intended to "protect creditors as a class from the possibility that one or more creditors will obtain payment to the detriment of others."); *In re Globe Inv. & Loan Co.*, 867 F.2d 556, 560 (9th Cir. 1989) ("section 362 is intended to protect the debtor and to assure equal distribution among creditors"); *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 977, (1st Cir. 1997) (automatic stay designed to "assure creditors of equitable distribution.").

That *dicta* about the purpose of the automatic stay is not the same as providing standing. *See, In re Franck*, 19 F.3d 1440 (9th Cir. 1994) ("the fact that individual creditors might incidentally benefit from the automatic stay or be injured in some way by its violation does not give those creditors standing under the Bankruptcy Code to bring an action claiming the stay was violated").

In fact, the Ninth Circuit expressly holds that creditors *do not* have standing to pursue violations of the automatic stay. "[S]ection 362 is intended solely to benefit the debtor estate… [I]f the trustee does not seek to enforce the protections of the automatic stay, no other party may challenge acts purportedly in violation of the automatic stay." *In re Pecan Groves of Ariz.*, 951 F.2d 242, 245 (9th Cir. 1991). In appeals from the Bankruptcy Court in this District, both the District Court and the Bankruptcy Appellate Panel have enforced the *Pecan Groves* rule denying standing to creditors seeking to pursue violations of the automatic stay. *O'Reilly v. Milgrom (In re O'Reilly & Collins)*, 2014 U.S. Dist. LEXIS 113275, *14, 2014 WL 4060693 (N.D. Cal. 2014); *ComUnity Collectors LLC v. Mortg. Elec. Registration Servs.*, 2012 U.S. Dist. LEXIS 110690, *27, 2012 WL 3249509 (N.D. Cal. 2012) ("This Court concludes *Pecan Groves* is controlling on the issue."); *Lei v. Yan (In re Yan)*, 2015 Bankr. LEXIS 600, *8 (BAP 9th Cir. 2015) ("the trustee as the representative of the bankrupt estate is the only party with standing to bring such claims;" citing *Pecan Groves*).

The California appellate courts have reached the same conclusion:

> It is fundamental under federal bankruptcy law that the automatic stay operates for the benefit of the debtor and trustee only, and gives other parties interested in property affected by the automatic stay no substantive or procedural rights. [Citations.] *If the debtor or trustee chooses not to invoke the protections of the automatic stay, no other*

> *party may attack any act in violation of the automatic stay.* [Cites omitted] [O]ur Supreme Court [stated] in *Beck v. Unruh* (1951) 37 Cal.2d 148, 153 [231 P.2d 13], that a party other than the debtor or the trustee "'is not in a position to complain of the flaunting of the claimed authority of the bankruptcy court which that court did not choose to exercise …'" (Campbell *v. Lauigan, supra*, at p. 658, italics omitted.) The Ninth Circuit agreed, in strikingly similar terms [citing *Pecan Groves*].

*Danko v. O'Reilly*, 232 Cal. App. 4th 732, 748, 181 Cal. Rptr. 3d 304, 316 (1st. Dist. Ct. App. 2014) (emphasis in original)

It is clear as a matter of controlling law that Bolter does not have standing to assert a violation of the automatic stay. The Contempt Motion and the associated Adversary Proceeding should be summarily dismissed. The decision of Bolter and her counsel to proceed with the Contempt Motion in the absence of standing to do so and notwithstanding a prior warning by the Court raises serious questions about compliance with Rule 9011.

### C. This is Not an Appropriate Case for Contempt

Bolter cites authority for the proposition that a Court may punish willful violations of the automatic stay. E.g., *In re Rainbow Magazine,* 77 F.3d 278, 285 (9th Cir. 1996) (concluding that the representative of the debtor had "abused the bankruptcy process in bad faith, justifying the sanction imposed under the inherent powers of the bankruptcy court.")

This is simply not such a case. Here, neither the Trustee nor the Debtor objected to the alleged violation of the automatic stay. See, Wilson Dec.; Dkt #171-2; ¶¶4, 5. The violation was entirely inadvertent, and seems to have been invited by Bolter, who elected to file a pointless Objection to Discharge in order to achieve a "cheap" extension of the Debtor's stay. See, Greenblatt Dec., Dkt #171-3; ¶5.

Stoneridge has separately moved the Court to annul the automatic stay. The Ninth Circuit approves of annulling the automatic stay in such circumstances. *In re Schwartz,* 954 F.2d 569, 573 (9th

Cir. 1992) ("The use of the word 'annulling' [in § 362(d)] permits the [court's] order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay." quoting COLLIERS.) The facts of this case are better suited to annulling the automatic stay than to granting a sanctions award respecting its violation.

## IV. CONCLUSION

The Debtor and the Trustee agreed that there was no equity in the Property, and neither has opposed Stoneridge's foreclosure sale. The only opposition comes from Bolter, a junior secured creditor, who thought that a pointless Objection to Discharge was a less burdensome way to stay Stoneridge's foreclosure than by filing her own bankruptcy case, as she had previously threatened to do. Audio of 10-26-17; Dkt #151; at 2:30 min. But, as the Court previously explained to Bolter, the Debtor's stay does not protect her junior lien.

As the Court previously explained to Bolter's counsel, Bolter has no standing to assert violations of the automatic stay. The Stay Litigation is a misuse of this Court's powers, especially since it seems dedicated primarily to finding a source to pay Bolter's attorney's fees incurred in prosecuting it. The Court should dismiss the Stay Litigation.

DATED:	February 7, 2018	Respectfully submitted,

			GREENBLATTLOVERIDGE, Attorneys at Law
			ST. JAMES LAW, P.C.


			By:   /s/  *Michael St. James*  .
			       Michael St. James
			Counsel for 3884 Stoneridge, LLC,
			       GreenblattLoveridge and Frederic J Greenblatt